UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    CRIMINAL ACTION

V.                                          NO. 16-63

DAN PIZARRO                                 SECTION "F"


ORDER AND REASONS

Before the Court are the defendant's motions for acquittal under Rule 29 of the Federal Rules of Criminal Procedure and for a new trial under Rule 33 of the Federal Rules of Criminal Procedure. For the reasons that follow, the motions are DENIED.

**Background**

A jury convicted Dan Pizarro of knowingly and intentionally conspiring with others to distribute and possession with intent to distribute 500 grams or more of a substance containing a detectable amount of methamphetamine and a quantity of heroin, in violation of 21 U.S.C. § 846.

For months in the spring and summer of 2014, Leonid Djuga mailed large quantities of methamphetamine and heroine from his home in California to individuals living in Louisiana. It was the government's theory at trial that Pizarro introduced Djuga to those individuals, and facilitated the transportation and sale of those narcotics. The investigation into this operation began when St. Bernard Sheriff's Office deputies arrested two of Djuga's recipients, Joseph Scott Carr and Jesse Gore, on June 24, 2014.

1

In an effort to cooperate, Carr told agents that he was expecting a package of methamphetamine to arrive to the local FedEx store in two days. Officers intercepted that package, and the following day, June 27, 2014, officers intercepted three additional packages. In total, the four packages contained over 1,000 grams of methamphetamine, concealed in plastic bottles. The agents identified the source of the packages as Leonid Djuga. On July 15, 2014, the officers traveled to California to arrest Djuga and search his residence. There, they identified plastic bottles similar to those found in the packages, receipts showing mailings from California to Louisiana, and a drug ledger. Further investigation allowed the officers to obtain financial records, email communications, and the contents of Djuga's phone. This evidence led the officers to Pizarro.

To establish the existence of the conspiracy, the government had to prove that "(1) an agreement existed between two or more persons to violate federal narcotics law; (2) [Pizarro] knew of the existence of the agreement; and (3) [he] voluntarily participated in the conspiracy." United States v. Ochoa, 667 F.3d 643, 648 (5th Cir. 2012). Although the government must prove each element beyond a reasonable doubt, "[a] conspiracy may be proved by circumstantial evidence . . . and the government need not prove that the defendant knew of all the details, only that he knew of the conspiracy's essential purpose." United States v. Gourley,

168 F.3d 165, 170 (5th Cir. 1999) (internal quotations omitted). In support of their case, the government introduced several of Pizarro's co-conspirators as witnesses, recordings of incriminating phone calls Pizarro made while incarcerated for a separate crime previous to his arrest for this charge, and evidence seized from the residences of his co-conspirators that linked Djuga and Pizarro to drug distributions in Louisiana. At the conclusion of the three-day trial, the jury found the defendant guilty on August 17, 2017.

I. Motion for Acquittal

A. Standard of Review

Rule 29 of the Federal Rules of Criminal Procedure governs motions for judgment of acquittal. Such motions "challenge the sufficiency of the evidence to convict." United States v. Hope, 487 F.3d 224, 227 (5th Cir. 2007)(quoting United States v. Lucio, 428 F.3d 519, 522 (5th Cir. 2005)). Rule 29 obliges the Court to "enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction" either on its own, or on the defendant's motion at the close of the government's evidence; the Court may reserve decision on the defendant's motion after the jury returns a verdict. Fed. R. Crim. P. 29(a), (b). After the jury verdict, a defendant may move for, or renew, a motion for judgment of acquittal. Fed. R. Crim. P. 29(c).

Rule 29 relief animates the Due Process Clause of the United States Constitution's Fourteenth Amendment, which forbids conviction "'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [the defendant] is charged.'" See Jackson v. Virginia, 443 U.S. 307, 315 (1979)(citation omitted); see also In re Winship, 397 U.S. 358, 363 (1970)("The [reasonable doubt] standard provides concrete substance for the presumption of innocence -- that bedrock 'axiomatic and elementary' principle whose 'enforcement lies at the foundation of the administration of our criminal law.'"). Jackson v. Virginia fashioned the standard applicable to a defendant's challenge to the sufficiency of the evidence:

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

443 U.S. 307, 318-19 and 319 n.13 (1979)(noting that "this inquiry does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt'"; importantly, this "standard . . . does not permit a court to make its own subjective determination of guilt or innocence;" this "criterion . . . impinges upon 'jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of law.")(citation omitted, emphasis in original); see also United States v. Vargas-Ocampo, 747 F.3d 299, 301 (5th Cir.

2014)(*en banc*)(citing Jackson, 443 U.S. at 319); see also United States v. Uvalle-Patricio, 478 F.3d 699, 701 (5th Cir. 2007)("the evidence presented must allow the jury 'to find every element of the offense beyond a reasonable doubt.'")(citation omitted). The Court determines "only whether the jury made a rational decision, not whether its verdict was correct on the issue of guilt or innocence." See United States v. Dean, 59 F.3d 1479, 1484 (5th Cir. 1995)(citation omitted); see also United States v. Isgar, 739 F.3d 829, 835 (5th Cir. 2014)(citation omitted). In assessing rationality, the Court considers all evidence and all reasonable inferences drawn therefrom in the light most favorable to the prosecution. United States v. Ramos-Cardenas, 524 F.3d 600, 605 (5th Cir. 2008); United States v. Loe, 262 F.3d 427, 432 (5th Cir. 2001)(The jury "retains the sole authority to weigh any conflicting evidence and to evaluate the credibility of witnesses.").[3]

Notwithstanding this deferential, insulating standard, the Fifth Circuit instructs the Court to "consider the countervailing evidence as well as the evidence that supports the verdict" and credit "only 'reasonable inferences from the evidence[.]'" See United States v. Moreland, 665 F.3d 137, 149 (5th Cir. 2011) (The Court "cannot 'credit inferences within the realm of possibility

---

[3] The same test applies whether the government's case depends on direct or circumstantial evidence. United States v. Thomas, 627 F.3d 146, 151 (5th Cir. 2010)(citation omitted).

when those inferences are unreasonable.'")(citations omitted); but see United States v. Mendoza, 522 F.3d 482, 488 (5th Cir. 2008)("The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, and the jury is free to choose among reasonable constructions of the evidence."). The Court also scrutinizes the verdict to ensure that it is not based "on mere suspicion, speculation, or conjecture, or on an overly attenuated piling of inference on inference." Moreland, 665 F.3d at 149 (quoting United States v. Rojas Alvarez, 451 F.3d 320, 333 (5th Cir. 2006)). Nevertheless, "[c]ircumstances altogether inconclusive, if separately considered, may, by their number and joint operation, especially when corroborated by moral coincidences, be sufficient to constitute conclusive proof." United States v. Vasquez, 677 F.3d 685, 692 (5th Cir. 2012)(citations, emphasis omitted).

## B. Application

A rational jury had sufficient evidence to convict Pizzaro of conspiring with others to distribute and possession with intent to distribute methamphetamine and a quantity of heroin. The government introduced testimony from several co-conspirators that implicated Pizarro in the conspiracy at trial and supported the jury's verdict. Jason Gore testified that he met Pizarro in February 2014 while in Orleans Parish Prison. According to Gore, they made a plan to ship narcotics from Pizarro's source in

6

California, Leonid Djuga, to Louisiana after they were both released. Once Pizarro was released, he contacted Gore, who took Pizarro to Joseph Scott Carr's apartment. Pizarro stayed with Carr while he set up the methamphetamine shipments. Gore testified that Pizarro contacted Djuga, and shortly thereafter methamphetamine packages began arriving at Carr's apartment.

Carr corroborated Gore's testimony. He testified that Pizarro stayed at his apartment while he set up shipment with Djuga. Carr stated that he was responsible for receiving the packages, distributing the drugs, and then sending money back to Djuga. According to Carr, Pizarro put him in touch with Djuga so Carr could continue the arrangement after Pizarro left New Orleans. Carr also testified as to the contents of his cellphone, which was seized when he was arrested at the initiation of the investigation. Pizarro and Djuga's contact information was listed, as well as photos of prepaid cards that the group used to pay Djuga, per Pizarro's instruction.

A third cooperating witness, Michael Stephens, also testified that Pizarro was involved in transporting narcotics from California to Louisiana. A mutual friend introduced Stephens to Pizarro around April 2014 because Stephens was hoping to sell heroin. Stephens testified that Pizarro called Djuga in his presence and asked if he could supply Stephens with a sample of heroin. Djuga delivered, and Stephens began communicating with

7

Djuga directly. Stephens also testified that Pizarro referred to Djuga as his partner, and was aware that helping Stephens find heroin would benefit Pizarro financially.

Any rational trier of fact could find, beyond reasonable doubt that Pizarro participated in the conspiracy; specifically, that (1) an agreement existed between Pizarro and at least one other person to violate federal narcotics law; (2) Pizarro knew of the existence of the agreement; and (3) he voluntarily participated in the conspiracy. The testimony of the cooperating witnesses, in addition to the nontestimonial evidence the government offered, supports the Courts finding that the verdict was not based "on mere suspicion, speculation, or conjecture, or on an overly attenuated piling of inference on inference." Moreland, 665 F.3d at 149 (quoting United States v. Rojas Alvarez, 451 F.3d 320, 333 (5th Cir. 2006)). Considering all evidence and all reasonable inferences drawn therefrom in the light most favorable to the prosecution, the Court finds that the jury made a rational decision.

## II. Motion for a New Trial

### A. Standard of Review

Rule 33 of the Federal Rules of Criminal Procedure allows a trial court, upon a defendant's motion, to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Disfavored, Rule 33 motions are viewed

"with great caution." See United States v. Infante, 404 F.3d 376, 387 (5th Cir. 2005).

In the Fifth Circuit, "a new trial ordinarily should not be granted 'unless there would be a miscarriage of justice or the weight of evidence preponderates against the verdict.'" United States v. Wright, 634 F.3d 770, 775 (5th Cir. 2011)(citations omitted); see also United States v. Robertson, 110 F.3d 1113, 1120 n. 11 (5th Cir. 1997)("It has been said that on such a motion [for new trial] the court sits as a thirteenth juror.  The motion, however, is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial . . . should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict.").[1]  "A new trial is granted only upon demonstration of adverse effects on substantial rights of a defendant." United States v. Wall, 389 F.3d 457, 466 (5th Cir. 2004)(citation omitted).  The Court lacks "authority to grant a motion for a new trial under Rule 33 on a basis not raised by the defendant." United States v. Shoemaker, 746 F.3d 614, 631-32 (5th Cir. 2014)(citation omitted).

Unlike the cramped standard applicable to Rule 29 motions, the Court has broad discretion to "carefully weigh the evidence

---

[1] But see United States v. O'Keefe, 128 F.3d 885, 898 (5th Cir. 1997)("The grant of a new trial is necessarily an extreme measure, because it is **not** the role of the judge to sit as a thirteenth member of the jury.")(emphasis added).

9

and may assess the credibility of the witnesses during its consideration of the motion for new trial." United States v. Herrera, 559 F.3d 296, 302 (5th Cir. 2009)(quoting United States v. Tarango, 396 F.3d 666, 672 (5th Cir. 2005)); United States v. Shoemaker, 746 F.3d 614, 631-32 (5th Cir. 2014)("The 'interest of justice' may take into account 'the trial judge's evaluation of witnesses and weighing of the evidence'", but the Court "may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable.")(citations omitted). A new trial may be appropriate where the evidence "tangentially supports a guilty verdict, but in actuality, the evidence preponderates sufficiently heavily against the verdict such that a miscarriage of justice may have occurred." Tarango, 396 F.3d at 672 (citations omitted). However, the Court still "must not entirely usurp the jury's function or simply set aside a jury's verdict because it runs counter to [the] result the district court believed was more appropriate." Id. (citations omitted). Rather, the Court should set aside a jury's guilty verdict in the interests of justice only when exceptional circumstances are present. See id.; see also United States v. Poole, 735 F.3d 269, 279 (5th Cir. 2013)("Rule 33 case law cannot be understood except through the lens of avoiding the injustice of a compromised verdict.").

## B. Application

Neither the weight of the evidence nor interest of justice necessitates a new trial. The government introduced sufficient evidence to support the jury's verdict. In addition to the testimony from cooperating witnesses regarding Pizarro's role in facilitating a narcotic supply chain from California to Louisiana, the government also introduced evidence implicating Pizarro in the sale of methamphetamine and heroin.

Jason Gore, Joseph Scott Carr, and Michael Stephens testified that Pizarro created code words for drug-related communications. "Battery" referred to an ounce of methamphetamine, "case of batteries" referred to a pound of methamphetamine, and "Chinese batteries" and "H batteries" referred to heroin. Carr also testified that he assigned local distributors as "man 1, man 2, man 3, and man 4" to keep track of the distribution.

From May to September 2014, Pizarro was incarcerated at Los Angeles Metropolitan Detention Center. During that time, he made a series of phone calls to Djuga and other co-conspirators using their coded terminology. These calls were recorded and introduced at trial. Pizarro referred to his Louisiana co-conspirators by their real names, street names, and "man 1, man 2, man 3." He also used code words such as "batteries," "case of batteries," and "Chinese batteries." Pizarro stayed apprised of the conspiracy; Djuga immediately informed Pizarro of the four intercepted FedEx

packages.  He also spoke to Djuga about his "account," and asked how much money Djuga had set aside for him.  While Pizarro was in jail, Djuga deposited $900, through another co-conspirator, into Pizarro's account.  Finally, a reasonable jury could find that the phone calls indicate that Pizarro had a role in managing the operation. Pizarro directed Djuga to not front drugs to Michael Stephens, to write things down when they spoke, and to reroute future packages. He also lamented over putting Djuga in charge of the operation.

In his motion for a new trial, Pizarro contends that because Djuga did not testify at trial, the government failed to establish the connection between Djuga, Carr, and Pizarro.  Pizarro also contends that the government failed to prove interdependence in the actions or roles of the co-conspirators.  He maintains that because of these deficiencies, the evidence at trial did not establish a conspiracy beyond reasonable doubt. The recorded phone calls between Djuga and Pizarro support a jury finding that Djuga and Pizarro were not only connected, but acting in concert. Further, a rational jury could find that the co-conspirators acted interdependently because the recordings indicate that Pizarro was kept apprised of the affairs of operation, that he maintained authority within the conspiracy, and several co-conspirators used the same coded terminology.  The evidence presented supports a

guilty verdict, and no exceptional circumstances are present to authorize the Court to set aside the jury's verdict.

Accordingly, IT IS ORDERED that the motion for acquittal is DENIED.  IT IS FURTHER ORDERED that the motion for a new trial is DENIED.

New Orleans, Louisiana, September 27, 2017

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE